**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____

|  |  |  |
|---|---|---|
| GITI TIRE GLOBAL TRADING PTE., LTD., | ) | |
| GITI RADIAL TIRE (ANHUI) COMPANY, | ) | |
| LTD., AND GITI TIRE (FUJIAN) | ) | |
| COMPANY LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No. 24-00083 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STEEL PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND SERVICE | ) | |
| WORKERS INTERNATIONAL UNION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____

**DEFENDANT'S RESPONSE TO PLAINTFFS'
<u>MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

ASHLEY AKERS
Senior Trial Counsel
U.S. Department of Justice,

Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel:  (202) 353-0521

January 6, 2025                    Attorneys for Defendant United States

# TABLE OF CONTENTS

**Page**

STATEMENT PURSUANT TO RULE 56.2 ..................................................................2

    I.    The Administrative Proceeding Under Review ...........................................2

    II.    Issues Presented For Review .......................................................................2

STATEMENT OF FACTS .....................................................................................3

SUMMARY OF ARGUMENT ...............................................................................9

ARGUMENT .......................................................................................................9

    I.    Standard Of Review.....................................................................................9

    II.    Commerce's Boat Freight Calculations Are Supported By Substantial Evidence...................................................................................................10

    III.    Plaintiffs Failed To Exhaust Their Administrative Remedies Regarding Their Skeletal Challenges To Commerce's CBP Instructions................12

CONCLUSION....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page(s)</u>**

*Agro Dutch Indus. Ltd. v. United States,*
    508 F.3d 1024 (Fed. Cir. 2007) ..............................................................................14

*Aramide Maatschappij V.o.F. v. United States,*
    901 F. Supp. 353 (Ct. Int'l. Trade 1995) ...............................................................14

*Boomerang Tube LLC v. United States,*
    856 F.3d 908 (Fed. Cir. 2017) ..............................................................................12

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ...............................................................................................9

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) .............................................................................................10

*Corus Staal BV v. United Sates,*
    503 F.3d 1370 (Fed. Cir. 2007) .......................................................................13, 14

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
    582 F.3d 1288 (Fed. Cir. 2009) ............................................................................15

*Fujitsu v. United States,*
    88 F.3d 1034 (Fed. Cir. 1996) ................................................................................9

*Gerber Food (Yunnan) Co. v. United States,*
    601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009) .........................................................14

*PAM, S.p.A. v. United States,*
    582 F.3d 1336 (Fed. Cir. 2009) ............................................................................10

*United States v. Eurodif,*
    555 U.S. 305 (2009) ...............................................................................................9

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474, 477 (1951) ........................................................................................9

*United States v. Nitek Elec., Inc.,*
    844 F. Supp. 2d 1298 (Ct. Int'l Trade 2012) ...................................................12, 13

## <u>STATUTES AND REGULATIONS</u>

19 C.F.R. § 351.224(f) ................................................................................................................... 7

19 C.F.R. **§** 351.212(b)(1) ........................................................................................................... 16

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................................... 9

19 U.S.C. § 1675(a)(2)(A)(i) ...................................................................................................... 16

28 U.S.C. § 2637(d) .................................................................................................................... 12

19 C.F.R. § 351.309(c)(1)(ii) ...................................................................................................... 13

19 C.F.R. § 351.309(c)(2) ........................................................................................................... 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| _____ ) | |
| GITI TIRE GLOBAL TRADING PTE., LTD., ) | |
| GITI RADIAL TIRE (ANHUI) COMPANY, ) | |
| LTD., AND GITI TIRE (FUJIAN) ) | |
| COMPANY LTD., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 24-00083 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STEEL PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56.2 of this Court's Rules, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs Giti Tire Global Trading Pte. Ltd., Giti Radial Tire (Anhui) Company Ltd., and Giti Tire (Fujian) Company Ltd. (collectively, plaintiffs).  Plaintiffs challenge the Department of Commerce's (Commerce) amended final results in its administrative review of the antidumping duty order on Certain Passenger Vehicle and Light Truck Tires (PVLT) from the People's Republic of China. As demonstrated below, plaintiffs' motion should be denied because Commerce's amended final results are supported by substantial evidence and otherwise in accordance with law.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

**I.    <u>The Administrative Determination Under Review</u>**

The administrative determination under review is *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 26,130 (Dep't of Commerce Apr. 15, 2024) (Amended Final Results) (P.R. 445)[1] and the accompanying Analysis of Ministerial Error Allegation, *2021-2022 Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Analysis of Ministerial Error Allegation* (Mar. 29, 2024) (Ministerial Error Memorandum) (P.R. 442).  The period of review (POR) covers August 1, 2021, through July 31, 2022.

**II.    <u>Issues Presented For Review</u>**

1.    Whether Commerce's decision to exclude a distance component from its calculations for boat freight[2] is supported by substantial evidence and otherwise in accordance with law.

2.    Whether plaintiffs failed to exhaust their claim that Commerce's instructions to U.S. Customs and Border Protection (CBP) to liquidate unreported entries at the China-wide rate are unsupported by substantial evidence or otherwise not in accordance with law.

---

[1] Citations to public documents from the administrative record are identified as "P.R. ___," while citations to confidential record documents are identified as "C.R. ___." Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 23, is referred to as "Pl. Mot."
[2] Plaintiffs' motion describes this surrogate value as boat freight, whereas Commerce used the terms "ocean freight" and "boat freight" to describe the surrogate value in its Final Results.  We use the term boat freight throughout this brief to conform to plaintiffs' brief.

## STATEMENT OF FACTS

On October 11, 2022, Commerce initiated the 2021-2022 administrative review of the antidumping duty order on certain PVLT from China after receiving timely requests from interested parties, including the petitioner United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (Petitioner).  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 61,278, 61,284 (Dep't of Commerce Oct. 11, 2022) (Initiation Notice) (P.R. 21).  Commerce initiated the administrative review with respect to 44 respondent companies, including plaintiffs.  *See* Initiation Notice at 61,285 (P.R. 21).

On February 1, 2023, Commerce issued a respondent selection memorandum selecting Giti Radial Tire (Anhui) Company, Ltd.; Giti Tire (Anhui) Company Ltd.; Giti Tire (Chongqing) Company, Ltd.; Giti Tire (Fujian) Co., Ltd.; Giti Tire Global Trading Pte. Ltd.; Giti Tire Greatwall Company, Ltd.; Giti Tire (Hualin) Company, Ltd.; and Giti Tire (Yinchuan) Company, Ltd. (collectively, Giti)[3]; and Sumitomo (Changshu) Co., Ltd., and Sumitomo Rubber Industries, Ltd. (collectively, Sumitomo) for individual examination.  *See 2021-2022 Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Respondent Selection Memorandum*, (Feb. 1, 2023) (Respondent Selection Memorandum) at 5-7 (P.R. 117) (C.R. 50).

On February 2, 2023, Commerce issued its initial questionnaire to plaintiffs.  *See Re: Administrative Review of the Antidumping Duty Order on Certain Passenger Vehicle and Light*

---

[3] Giti is a collapsed entity consisting of numerous companies, of which plaintiffs are a subset. Filings in the underlying review were made on behalf of plaintiffs, rather than the larger collapsed entity.

*Truck Tires from the People's Republic of China: Request for Information*, (Feb. 2, 2023) (Initial

Questionnaire) (P.R. 118).  In the Initial Questionnaire, Commerce requested that Giti report:

> each U.S. sale of merchandise entered for consumption during the POR, except:
> (1) for EP sales, if you do not know the entry dates, report each transaction
> involving merchandise shipped during the POR; and (2) for CEP sales made after
> importation, report each transaction that has a date of sale within the POR. If you
> believe there is a reason to report your U.S. sales on a different basis, please
> contact the official in charge before doing so.

*See id.* at Section C-1 (P.R. 118).  Plaintiffs responded to Sections C and D of Commerce's

Initial Questionnaire on March 27, 2023.  *See Re: Passenger Vehicle and Light Truck Tires from*

*the People's Republic of China: Section C Questionnaire Response*, (Mar. 27, 2023) (C.R. 171-

179).  Between July 24, 2023 and September 7, 2023, Giti responded to additional supplemental

questionnaires.  *See Re: Passenger Vehicle and Light Truck Tires from the People's Republic of*

*China: First Supplemental Questionnaire Response*, (July 24, 2023) (P.R. 277-278) (C.R. 316-

369); *Re: Passenger Vehicle and Light Truck Tires from the People's Republic of China: Second*

*Supplemental Questionnaire Response*, (Sept. 7, 2023) (P.R. 380) (C.R. 492-496).

On April 27, 2023, Commerce invited all interested parties to submit surrogate country

and surrogate value comments and information.  *See 2021-2022 Administrative Review of the*

*Antidumping Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's*

*Republic of China: Request for Economic Development, Surrogate Country, and Surrogate*

*Value Comments and Information*, (Apr. 27, 2023) (P.R. 203).  On May 18, 2023, the Petitioner

submitted a surrogate value for boat freight – stated in U.S. dollar per-kilogram – derived from

the cost of shipping the subject merchandise from Shanghai to seven different ports of entries in

the United States for each month during the POR.  *See Re: Certain Passenger Vehicle and Light*

*Truck Tires from the People's Republic of China: Petitioner's First Surrogate Value Submission*,

(May 18, 2023) (Petitioner's Surrogate Value Submission) at Exhibit 12 (P.R. 213-214).  The

same day, plaintiffs submitted surrogate value information, but did not include a surrogate value for boat freight. *See Re: Passenger Vehicle and Light Truck Tires from the People's Republic of China: Surrogate Value Comments*, (May 18, 2023) (Plaintiffs' Surrogate Value Submission) (P.R. 216-218).

On May 25, 2023, plaintiffs submitted rebuttal surrogate value comments. *See Re: Passenger Vehicle and Light Truck Tires from the People's Republic of China: Rebuttal Surrogate Value Comments* (May 23, 2023) (Rebuttal Surrogate Value Comments) (P.R. 242). In the Rebuttal Surrogate Value Comments, plaintiffs restated the boat freight surrogate value in U.S. dollars per-kilogram, per kilometer, by allocating the freight value over the distance in kilometers between Shanghai and the relevant ports. *See id.* at Exhibit 4.

On September 7, 2023, Commerce published its preliminary results. *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission, and Preliminary Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 61,506 (Dep't of Commerce Sept. 7, 2023) (Preliminary Results) (P.R. 379) and the accompanying Preliminary Issues and Decision Memorandum (PDM) (P.R. 370). In the Preliminary Results, Commerce stated that "{p}ursuant to Commerce's assessment practice, for entries that were not reported in the U.S. data submitted by Giti {. . .}, we will instruct to CBP to liquidate such entries at the China-wide rate {of 76.46 percent}." *See* Preliminary Results at 61,508. On September 25, 2023, Commerce also uploaded draft customs instructions for parties to review and comment on for the final results. In the assessment instruction applicable to Giti, Commerce stated its intent to instruct CBP to liquidate all entries exported by Giti and imported by an affiliated importer during the POR at an importer-specific assessment rate. For all entries not imported by the affiliated importer,

Commerce stated its intent to instruct CBP to liquidate at the China-wide rate. *See* Draft Liquidation Instructions, (Sept. 25, 2023) (Draft Instruction) at 3 (C.R. 498).

On October 13, 2023, Plaintiffs submitted their case brief, in which they argued that the boat freight surrogate value must be stated on a U.S dollar per-kilogram, per-kilometer basis because freight surrogate values are typically multiplied by the distance in kilometers. *See Re: Passenger Vehicle and Light Truck Tires from the People's Republic of China: Giti Case Brief*, (Oct. 13, 2023) (Case Brief) at 5-6 (P.R. 394) (C.R. 506). Plaintiffs did not raise any arguments regarding Commerce's draft customs instructions or assessment language in the Federal Register notice accompanying the Preliminary Results. *See id.* On March 12, 2024, Commerce published in the Federal Register the Final Results of its administrative review. *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No shipments; 2021-2022*, 89 Fed. Reg. 17,817 (Dep't of Commerce Mar. 12, 2024) (Final Results) (P.R. 436) and the accompanying Final Issues and Decision Memorandum (IDM) (P.R. 424). In the Final Results, Commerce again stated that "{p}ursuant to Commerce's assessment practice, for entries that were not reported in the U.S. data submitted by Giti {. . .}, we will instruct to CBP to liquidate such entries at the China-wide rate {of 76.46 percent}." *See* Final Results at 17,819.

Commerce also found that it was appropriate to continue stating the boat freight surrogate value on a per-kilogram basis. *See* IDM at 43. In particular, Commerce disagreed with Giti's argument "regarding the {surrogate value} for boat freight and that this {surrogate value} should be stated on a per-kg, per-km basis, instead of a per-kg basis" because the underlying source from which the value was derived (Maersk) "reports the data on a {U.S. dollar} per kg basis as a flat fee for the shipment of a container to a specific location." *See id.* Commerce further

explained that "there is nothing on the record to support {Plaintiffs'} approach or to show why revising this calculation" in line with Plaintiff's request "would not be distortive." *See id.* Commerce also stated that its methodology conformed to its treatment of the same surrogate value source in a prior segment of this administrative review. *See id.* (citing *Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China and Final Determination of No Shipments; 2020-2021* (Dep't of Commerce Mar. 7, 2023) at 46-47).

On March 12, 2024, plaintiffs submitted to Commerce a timely ministerial error allegation. *See Re: Passenger Vehicle and Light Truck Tires from the People's Republic of China: Ministerial Error Comments*, (March 12, 2024) (Ministerial Error Allegation) (P.R. 437) (C.R. 519). Plaintiffs alleged that Commerce made a ministerial error by stating the surrogate value for boat freight in the wrong unit of measure in the Final Results, and thus, Commerce erroneously calculated the dumping margin by overstating the boat freight input. *See id.* at 3-4. Specifically, plaintiffs alleged that Commerce erred by multiplying the input quantity stated on a per-kilogram basis by the distance, instead of multiplying the input quantity stated on a per-kilogram, per-kilometer basis by the distance. *See id.* Plaintiffs argued that Commerce should have instead used the distance information submitted by plaintiffs in their Rebuttal Surrogate Value Comments to calculate an average per-kilogram, per-kilometer boat surrogate value, as it did for the truck freight calculation. *Id.* Plaintiffs also argued that Exhibit 1-B of the surrogate value spreadsheet labels the source unit on a per-kilogram, per-kilometer basis. *Id.*

On March 29, 2024, Commerce issued a memorandum detailing its analysis of the ministerial error allegation and corresponding rebuttal comments. *See 2021-2022 Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the*

*People's Republic of China: Analysis of Ministerial Error Allegation* (March 29, 2024)

(Analysis of Ministerial Error Allegation) (P.R. 442).  Commerce agreed that it made a

ministerial error in Exhibit 1-B of the surrogate value spreadsheet by mislabeling the boat freight

rate as being on a per-kilogram, per-kilometer basis and by calculating the boat freight using

both the input quantity in kilograms and the reported distance.  *See id.* at 3.  Citing its Final

Results, Commerce confirmed that it intended for the boat freight rate to be calculated on a per-

kilogram basis based on its finding that the surrogate value source, Maersk, reports the boat

freight data on a per-kilogram basis only.  *See id.*  Therefore, Commerce conformed its

calculations to its stated intent in the Final Results.  *See id.*; *Re: 2021 – 2021 Antidumping*

*Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's*

*Republic of China: Calculations for Giti for the Amended Final Results*, (March 29, 2024) (C.R.

520).  Commerce, however, declined to revisit its substantive determination to calculate boat

freight on a per-kilogram basis.  Commerce found that its decision to calculate boat freight on a

per-kilogram basis was methodological in nature and, thus, not a ministerial error within the

meaning of 19 C.F.R. § 351.224(f).  *See* Analysis of Ministerial Error Allegation at 4.

On April 14, 2024, Commerce published the Amended Final Results in the *Federal*

*Register*, in which plaintiffs' weighted-average dumping margin for the POR was corrected to

20.52 percent.  *See* Amended Final Results (P.R. 445).  Commerce announced, for a third time,

that it would instruct CBP to assess antidumping duties on all appropriate entries of subject

merchandise in accordance with the weighted-average dumping margin in the Amended Final

Results.  *See id.* at 26,131 (citing *Non-Market Economy Antidumping Proceedings: Assessment*

*of Antidumping Duties*, 76 Fed. Reg. 65,694 (Dep't of Commerce Oct. 24, 2021).

On April 17, 2024, plaintiffs filed this lawsuit.  *See* Summons, ECF No. 1.

## SUMMARY OF THE ARGUMENT

Commerce's Amended Final Results are supported by substantial evidence. Commerce adequately explained why it calculated the boat surrogate value in this administrative review on a per-kilogram basis, and demonstrated that it was consistent with its past practice. Therefore, the Court should sustain Commerce's Amended Final Results.

Next, plaintiffs never raised before Commerce their challenge to Commerce's instructions to Customs and Border Protection (CBP). Thus, this argument is not exhausted and should not be considered by the Court. Additionally, plaintiffs fail to develop this argument in any meaningful way—instead generically and briefly arguing that Commerce instructed CBP "inappropriately." But without any factual or legal development of this claim, the Court should deem the argument waived.

## ARGUMENT

### I.    Standard Of Review

In reviewing Commerce's antidumping duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion' found by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. v.*

9

*NLRB*, 305 U.S. 197, 229 (1938)); *see also PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009).  The requisite proof may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent {Commerce's} finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted).

**II.    Commerce's Boat Freight Calculations Are Supported By Substantial Evidence**

The Court should sustain the Amended Final Results because Commerce's calculations are supported by substantial record evidence.

As Commerce explained in the Final Results, "the source used for the boat freight {surrogate value}, Maersk, reports the data on a {U.S. dollar} per kg basis as a flat fee for the shipment of a container to a specific location."  *See* Final Results at 43-44.  In particular, the Maersk data provided fees for shipping subject merchandise (i.e. new tires) in 20- or 40-foot containers from Shanghai to Baltimore, MD; Charleston, SC; Savannah, GA; Miami, FL; Houston, TX; and Long Beach, CA.  *See Re: Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Petitioner's First Surrogate Value Submission*, (May 18, 2023) (Petitioner's First Surrogate Value Submission) at Exhibit 12 (P.R. 213).  These rates were not stated on a per-kilometer basis, but instead reflected a flat rate for shipping the specified size container.

Because the Maersk data upon which Commerce relied was not stated on a distance basis, but rather a weight basis, Commerce declined to make the distance adjustment advocated by plaintiffs because it could be "distortive."  *See* IDM at 43; Rebuttal Surrogate Value Comments at Exhibit 4-2.  Plaintiffs do not identify *any* record evidence supporting their contrary position that Commerce should have incorporated a distance factor into its calculations.  Indeed, the only

evidence that plaintiffs provided during the review was a breakdown of the distance between Shanghai and the covered ports without any evidence that the Maersk rates were derived from those distances.

Plaintiffs are also wrong that Commerce's practice is to calculate all boat freight on a per-kilogram, per-kilometer basis without regard for the underlying surrogate value source or record. *See* Pl. Br. at 7-8. Commerce has previously calculated boat freight on a per-kilogram basis, as opposed to per-kilogram, per-kilometer basis. *See, e.g.*, *Aluminum Extrusions From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80,506 (Dep't of Commerce Oct. 3, 2024) and the accompanying Issues and Decision Memorandum at Comment 3; *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 88 Fed. Reg. 1,559 (Dep't of Commerce Jan. 11, 2023) and the accompanying Issues and Decision Memorandum at Comment 1; *Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2013–2014*, 80 Fed. Reg. 39,060 (Dep't of Commerce July 8, 2015) and the accompanying Preliminary Issues and Decision Memorandum at 19. Indeed, as noted in the Final Results, Commerce followed its exact methodology in this case in the preceding administrative review of this order. *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020–2021*, 88 Fed. Reg. 15,663 (Dep't of Commerce March 14, 2023) and accompanying Issues and Decision Memorandum at Comment 16.

While plaintiffs cite Commerce's final results in the antidumping duty investigation on tetrafluoroethane products from China to argue that Commerce's normal practice is to multiply

the freight surrogate value by the distance from the supplier to the factory, there is no indication that Commerce faced the same issue in that case that it does here – namely, that the underlying surrogate value was a flat rate that on its face included no distance component. *See* Pl. Mot. at 7 (citing *1,1,1,2 Tetrafluoroethane (R-134a) from the People's Republic of China: Final Determination of the Antidumping Duty Investigation*, 82 Fed. Reg. 12,192 (Dep't of Commerce Mar. 1, 2017).

Therefore, based on the record evidence and Commerce's past practice, Commerce properly calculated the boat surrogate value in this administrative review on a per-kilogram basis.

## III.    Plaintiffs Failed To Exhaust Their Administrative Remedies Regarding Their Skeletal Challenge To Commerce's CBP Instructions

Plaintiffs argue that Commerce's determination to instruct CBP to liquidate entries that were not reported in Giti's U.S. sales database at the China-wide rate is not supported by substantial evidence and is not in accordance with law. *See* Pl. Mot. at 8-9.   According to plaintiffs, Commerce's stated intent (which follows its established practice as reflected in *Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694 (October 24, 2011)), is "inappropriate" because Commerce instructed plaintiffs not to include certain entries during the POR in its U.S. sales database. *Id*. This argument lacks merit.

As an initial matter, the Court should not consider this argument because plaintiffs failed to exhaust it below and none of the exceptions to exhaustion apply.  Although exhaustion is discretionary, the statute contemplates that, absent one of the exceptions applying, a party *must* exhaust its administrative remedies.  28 U.S.C. § 2637(d) (this Court "shall, where appropriate, require the exhaustion of administrative remedies"); *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) ("[T]he court should insist that parties exhaust their remedies

before the pertinent administrative agencies."); *United States v. Nitek Elec., Inc.*, 844 F. Supp. 2d 1298, 1307 (Ct. Int'l Trade 2012) ("[A] plaintiff must 'show that it exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine."); *Corus Staal BV v. United Sates*, 503 F.3d 1370, 1379 (Fed. Cir. 2007) (explaining that the statutory provision "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies").

Commerce placed draft CBP instructions on the record along with its Preliminary Results that showed exactly how Commerce intended to instruct CBP to liquidate unreported entries at the China-wide rate. *See* Draft Instruction at 3. Commerce cited these instructions in both the Preliminary Results and Final Results. *See* Preliminary Results at 61,508; Final Results at 17,819. But plaintiffs never challenged the instructions at either stage. *See* 19 C.F.R. § 351.309(c)(1)(ii) (requiring written arguments "for the final results of an administrative review" to be filed within "30 days after the date of publication of the preliminary results of review" in an interested party's case brief); 19 C.F.R. § 351.309(c)(2) (requiring case briefs to "present all arguments that continue in the submitter's view to be relevant to" Commerce's final determination). There is no plausible explanation for plaintiffs' failure to raise the issue it now contests. Indeed, they provide none. *See Nitek Elec.*, 844 F. Supp. 2d at 1307 (applying exhaustion because plaintiff "fails to identify any applicable exception to the exhaustion requirement," and does not "request a waiver" or make any "effort to persuade the court to abandon a presumption favoring exhaustion"). Thus, permitting plaintiffs to now challenge the instructions without having first given Commerce the opportunity to consider the arguments and exercise its discretion or apply its expertise, would allow plaintiffs to subvert the statute and encourage parties to ignore Commerce's administrative procedures.

The Court has recognized limited exceptions to the exhaustion requirement, including where:  (1) plaintiff raised a pure question of law that did not require further agency involvement; (2) plaintiff did not have timely access to the confidential record; (3) an intervening judicial interpretation since the remand proceeding changed the agency result; and (4) raising argument at the administrative level would have been futile.  *Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2009).  None of these exceptions are applicable in this case.

First, the futility exception is narrow and applies to situations where parties "would be required to go through obviously useless motions in order to preserve their rights."  *Corus Staal*, 502 F.3d at 1379 (quotation marks and citation omitted).  But the "mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies."  *Id.* at 1378-81.  Here, there is no indication that Commerce would not have considered or addressed the argument that plaintiffs now raise.

Second, the issues are not pure questions of law of the type that would not require further involvement of the expert agency.  An issue is a pure question of law where "{s}tatutory construction alone is sufficient to resolve the merits of the argument" and no evidentiary issues remain.  *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007).  The claim that plaintiffs raise, while wholly undeveloped, is framed by plaintiffs as a mixed question of fact and law.  Pl. Mot. at 9.  Further, as this Court has recognized: "[t]he 'purely legal' exception is a weak one . . . .  Absent other factors indicating an exception should be made, the 'purely legal' argument should fail."  *Aramide Maatschappij V.o.F. v. United States*, 901 F. Supp. 353, 358, n.4 (Ct. Int'l. Trade 1995).

Third, there has been no intervening judicial decision that can serve as an excuse for

14

plaintiffs' failure to raise its challenges during the administrative proceeding.  *See Gerber Food*, 601 F. Supp. 2d at 1380 ("To qualify for the intervening judicial decision exception, there must have been judicial interpretations of existing law after decision below and pending appeal-interpretations which if applied might have materially altered the result.") (internal quotations omitted).  Fourth, there is no confidential information that plaintiffs lack.  Thus, none of the exceptions to the exhaustion requirement apply.

Furthermore, plaintiffs' untimely argument is so skeletal that it should be deemed waived even if the Court entertains it on the merits.  It is well-established that, "{i}f a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, {the Court} may deem that argument waived on appeal . . . ."  *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 582 F.3d 1288, 1296 (Fed. Cir. 2009).

Here, Commerce's decision in this case followed its established assessment practice since 2011, as initially published in *Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694 (Dep't of Commerce Oct. 24, 2011).  Plaintiffs argue that Commerce's decision to follow its established practice was "inappropriate" merely because plaintiffs "properly followed" Commerce's Initial Questionnaire instruction at Section C (*i.e.* "Report each U.S. sale . . . for CEP sales made after importation, report each transaction that has a date of sale within the POR.").  *See* Pl. Mot. at 9.  But plaintiffs fail to identify any specific entries that they think would be inappropriately liquidated at the China-wide rate as a result of Commerce's instructions.  *See* Pl. Mot. at 8-9.  Plaintiffs also fail to provide any statutory or regulatory citation to support their argument that Commerce "inappropriately" stated that it will instruct CBP to liquidate the unreported entries at the China-wide rate.  *See id.*  Indeed, under the antidumping duty laws, sales and entries are distinct concepts such that Commerce may calculate

a dumping margin on sales that are different from the universe of entries upon which antidumping duties are assessed at the end of a review. *See* 19 C.F.R. § 351.212(b)(1) (explaining that Commerce instructs CBP to "assess antidumping duties by applying the assessment rate to the *entered* . . . merchandise") (emphasis added); 19 U.S.C. § 1675(a)(2)(A)(i) (stating that Commerce shall use export price or constructed export price for determining the amount of any antidumping duty). Without any factual or legal development of their claim, we are unable to respond in any meaningful way, and, thus, this Court should deem plaintiffs' argument waived if it does not dismiss it on exhaustion grounds.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiffs' motion and sustain Commerce's Amended Final Results.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Ashley Akers
ASHLEY AKERS
Senior Trial Counsel
U.S. Department of Justice,
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-0521

January 6, 2025                              Attorneys for Defendant United States

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____
)
GITI TIRE GLOBAL TRADING PTE., LTD.,                    )
GITI RADIAL TIRE (ANHUI) COMPANY,                      )
LTD., AND GITI TIRE (FUJIAN)                                  )
COMPANY LTD.,                                                        )
)
                Plaintiffs,                                            )
)
                v.                                                           )
)
UNITED STATES,                                                       )          Court No. 24-00083
)
                Defendant,                                            )
)
                and                                                        )
)
UNITED STEEL PAPER AND FORESTRY,                       )
RUBBER, MANUFACTURING, ENERGY,                        )
ALLIED INDUSTRIAL AND SERVICE                             )
WORKERS INTERNATIONAL UNION,                           )
)
                Defendant-Intervenor.                          )
_____)

## **PROPOSED ORDER**

On consideration of plaintiffs' motion for judgment on the agency record, defendant's

response, and all other pertinent papers, it is hereby:

      ORDERED that plaintiff's motion is denied, and it is further

      ORDERED that the final determination of the U.S. Department of Commerce is sustained

in its entirety, and it is further

      ORDERED that judgment is entered in favor of the United States.


Dated: _____                                  _____
New York, New York                                           Richard K. Eaton, Judge

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief contains 4,841 words and therefore complied with the applicable word limitations. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

<u>*/s/ Ashley Akers*</u>
ASHLEY AKERS