## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE THE HONORABLE RICHARD K. EATON, JUDGE

|  |  |
|---|---|
| GITI TIRE GLOBAL TRADING PTE. LTD., GITI RADIAL TIRE (ANHUI) COMPANY LTD., AND GITI TIRE (FUJIAN) COMPANY LTD,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br><br>and<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,<br><br>*Defendant-Intervenor*. | **Court No. 24-00083** |

## DEFENDANT-INTERVENOR'S RESPONSE TO THE MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Roger B. Schagrin
Elizabeth J. Drake
Nicholas J. Birch
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to Defendant-Intervenor*

Date: January 20, 2025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT ...................................1

STATEMENT OF THE FACTS ...........................................................................3

ARGUMENT ....................................................................................................3

I.    Standard of Review.................................................................................3

II.   Giti's Arguments Regarding Commerce's Calculation of a Surrogate Value for Boat Freight Lack Both Support and Merit......................................................4

III.  Giti Failed to Exhaust its Administrative Remedies Regarding Commerce's Liquidation Instructions................................................................................13

CONCLUSION.................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABB Inc. v. United States*, 190 F. Supp. 3d 1159 (Ct. Int'l Trade 2016) .................... 4

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ........................................................ 3

*Corus Staal BV v. United Sates*, 503 F.3d 1370 (Fed. Cir. 2007) ............................ 15

*Dupont Teijin Films USA v. United States*, 407 F.3d 1211 (Fed. Cir. 2005) ................................................................................................................................. 3

*Golden Dragon Precise Copper Tube Grp., Inc. v. United States*, 38 ITRD 1522 (Ct. Int'l Trade 2016) ............................................................................ 12

*Goldlink Indus. Co. v. United States*, 431 F.Supp.2d 1323 (Ct. Int'l Trade 2006).................................................................................................................... 7

*Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289 (Fed. Cir. 2014) ........................................................................................................................ 8

*INS v. Elias- Zacarias*, 502 U.S. 478 (1992) ................................................................ 3

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ........................................................................................................................ 3

*Mittal Steel Galati S.A. v. United States*, 31 C.I.T. 1121 (2007)............................ 7, 8

*MTZ Polyfilms, Ltd v. United States*, 33 C.I.T. 1575 (2009)...................................... 4

*Nation Ford Chem. Co. v. United States*, 166 F.3d 1373 (Fed. Cir. 1999).................. 7

*QVD Food Co. v. United States*, 658 F.3d 1318 (Fed. Cir. 2011) ............................ 12

*SeAH Steel VINA Corp. v. United States*, 950 F.3d 833 (Fed. Cir. 2020) ............... 7, 8

*Shandong Rongxin Imp. & Exp. Co. v. United States*, 331 F. Supp. 3d 1390 (Ct. Int'l Trade 2018), *aff'd*, 779 F. App'x 744 (Fed. Cir. 2019) ...................... 6

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) ........................................................................................................................ 6

*Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F.Supp. 1008 (Ct. Int'l Trade 1992)................................................................................................ 12

*United States v. Zannino*, 895 F.2d 1 (1st Cir.1990) .................................................. 4

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011).............................................................................................................. 7

*Zhongce Rubber Grp. Co. Ltd. v. United States*, 352 F. Supp. 3d 1276 (Ct. Int'l Trade 2018), *aff'd*, 787 F. App'x 756 (Fed. Cir. 2019)............................ 14

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................................ 3

19 U.S.C.A. § 1677b(c)(1) ............................................................................................ 7

28 U.S.C. § 2637(d) .................................................................................................... 13

**Administrative Determinations**

*1,1,1,2 Tetrafluoroethane (R-134a) From the People's Republic of
China: Final Determination of Sales at Less Than Fair Value and
Affirmative Determination of Critical Circumstances, in Part*, 82 Fed.
Reg. 12,192 (Dep't Commerce Mar. 1, 2017) ........................................................... 5

Pursuant to USCIT Rule 56.2 and this Court's Scheduling Order (ECF No. 22), Defendant-Intervenor the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW" or "Defendant-Intervenor") submits this response to the motion for judgment upon the agency record submitted by Plaintiffs Giti Tire Global Trading Pte. Ltd, Giti Radial Tire (Anhui) Company Ltd., and Giti Tire (Fujian) Company Ltd (collectively "Giti" or "Plaintiffs") (ECF No. 23) ("*P. Brief*"). We have attempted in this brief to avoid repeating arguments already presented to this Court in *Defendant's Response to Plaintiffs' Motion for Judgment on the Administrative Record* (E.C.F. No. 24) ("*D. Brief*"). For the reasons set out herein and those in Defendant's response brief, this Court should reject Plaintiffs' arguments and should instead affirm the challenged determination of the Department of Commerce ("Commerce").

## RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT

### 1.    Administrative Determination for Which Review Is Sought

The determination contested by Plaintiffs is the final determination by Commerce in that agency's 2021-2022 review of the antidumping duty order on passenger vehicle and light truck ("PVLT") tires from China, published as *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89

Fed. Reg. 26130 (Dep't Commerce April 15, 2024) (P.R. 445).[1] *See Complaint* (E.C.F. No. 8) at 1.

**2.    Issues Presented and Summary of the Argument**

Plaintiffs challenge two aspects of Commerce's final determination in the 2021-2022 review. In the first challenge, Plaintiffs argue that Commerce was required to use disparate information provided by Plaintiffs to recalculate freight rate information on the record in setting a surrogate value for boat freight. But Plaintiffs fail to address what actually occurred in the single prior Commerce determination they rely on as supporting of their claims; in fact, that determination is contrary to Plaintiffs' position. Plaintiffs also fail to address that their own information showed that the calculation they sought would have distorted the surrogate value information, and that they had failed even to properly place that information on the record as required by Commerce's regulation.

In the second challenge, Plaintiffs claim that Commerce's liquidation instructions were improper. But despite Commerce having openly provided those instructions to the parties with its preliminary determination, Plaintiffs entirely failed to raise the issue before the agency. As Plaintiffs have failed to exhaust their administrative remedies on this point, their challenge here should be dismissed by the Court.

---

[1] Citations to documents on the public administrative record are denoted as "P.R." in this brief.

## STATEMENT OF THE FACTS

A thorough recitation of the relevant facts has been provided by Defendant in its response brief. *See D. Brief* (E.C.F. No. 24) at 3-8. As another repetition of those same facts here would serve no purpose in assisting this Court's decision, Defendant-Intervenor cites the Court to the facts as laid out in Defendant's brief.

## ARGUMENT

### I.    Standard of Review

This Court will uphold any determination by Commerce in an antidumping proceeding unless that determination is found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dupont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

As it is the agency empowered by Congress to administer the statute in this area, Commerce's decisions are due deference and are set aside only where "no reasonable factfinder" could have reached the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84, (1992). The Court does not reweigh the evidence or consider what decision it would have made in Commerce's shoes, but rather examines if the decisions Commerce made were supported by substantial evidence. *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984). "The fact that a plaintiff can point to evidence that detracts from the agency's conclusion or that there is a possibility of drawing two inconsistent conclusions from

3

the evidence does not preclude the agency's finding from being supported by substantial evidence." *ABB Inc. v. United States*, 190 F. Supp. 3d 1159, 1166-67 (Ct. Int'l Trade 2016).

## II.    Giti's Arguments Regarding Commerce's Calculation of a Surrogate Value for Boat Freight Lack Both Support and Merit

Plaintiffs' arguments regarding Commerce's calculation of a surrogate value for boat freight are presented cursorily in their opening brief, in no more than a single paragraph. Plaintiffs rely on a citation to a single Commerce determination (in *1,1,1,2 Tetrafluoroethane (R-134a) from the People's Republic of China* ("*Tetrafluoroethane*")) to claim that Commerce has an established practice of only using a distance-based surrogate freight value, without providing any discussion of the actual situation or Commerce's determination in that instance. *See P. Brief* at 7. The Court should reject such perfunctory claims. *See, e.g.*, *MTZ Polyfilms, Ltd v. United States*, 33 C.I.T. 1575, 1578 (2009) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones;" *quoting United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Plaintiffs' hesitance to explore the Commerce determination they depend on is perhaps not surprising, as an examination of that determination shows that Commerce there specifically rejected doing exactly what Plaintiffs demand Commerce do here. In the determination in its antidumping investigation of *Tetrafluoroethane* cited to by Plaintiffs, Commerce was likewise faced with a challenge to how it set a surrogate value for inland boat freight when no party had

4

provided cost information for inland boat transport. *See 1,1,1,2 Tetrafluoroethane (R-134a) From the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Affirmative Determination of Critical Circumstances, in Part,* 82 Fed. Reg. 12,192 (Dep't Commerce Mar. 1, 2017), accompanying Issues and Decision Memorandum at Comment 5 ("*Tetrafluoroethane IDM*"). Commerce addressed arguments there that it should instead use the ocean freight information on that record. But Commerce noted that in that case, "there is no data on the record with respect to the distances on which the ocean freight rates are based," and so declined to use those ocean freight rates to set the surrogate value for inland boat freight at all. *See id.* In that case, Commerce instead used the available truck freight data as the surrogate value for all inland freight, including inland boat freight. *Id.*

    In *Tetrafluoroethane*, Commerce certainly did not substitute some unconnected information on distances and recalculate the ocean freight rates, as Plaintiffs insist Commerce must do here. In the review challenged here, as Commerce explained, the record instead contains boat rates that were reported on a flat, USD per kg fee. *See Issues and Decision Memorandum for the Final Results* (Dep't Commerce March 5, 2024) (P.R. 423) at 43-44 ("*Final IDM*"). That does not appear to have been the case in *Tetrafluoroethane*, where Commerce noted that the ocean freight rates on that record were based on some, albeit unknown, distances. *See Tetrafluoroethane IDM* at Comment 5 (where Commerce noted that there were some unknown "distances on which the ocean freight rates are based" and where

Commerce contrasted the situation then before it with the situation from a prior determination where it had used ocean freight rates as a surrogate value for inland freight because, in that other situation, nothing "indicat{ed} whether the ocean freight rates used…were distance-specific.").

Thus, the only authority Plaintiffs cite to for their claim that Commerce should recalculate the flat-fee ocean rates in this review to substitute as inland boat freight rates is an instance where Commerce rejected altogether the use of some dissimilar distance-specific ocean rate information for that purpose. *Tetrafluoroethane* in no way supports Plaintiffs' claim that Commerce must manipulate the ocean rate data here.

In *Tetrafluoroethane*, Commerce instead substituted the surrogate value for inland truck freight as the best available data in that instance to value the cost of all inland freight in China; but Plaintiffs have failed to raise any claim that Commerce should have preferred the truck freight on the record here and so have waived any argument that Commerce should have substituted that information in this case. *See, e.g.*, *Shandong Rongxin Imp. & Exp. Co. v. United States*, 331 F. Supp. 3d 1390, 1406–07 (Ct. Int'l Trade 2018), *aff'd*, 779 F. App'x 744 (Fed. Cir. 2019) ("this Court has recognized that under the Federal Circuit's case law, arguments that are not raised in a party's opening brief…are generally waived."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

6

What Plaintiffs' arguments generally overlook is that Commerce's selection of surrogate values "is context and fact dependent." *SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 842 (Fed. Cir. 2020). Commerce is instructed to use "the best *available* information" to set surrogate values. 19 U.S.C.A. § 1677b(c)(1) (emphasis added). As the Court of Appeals for the Federal Circuit ("CAFC") has explained, that standard "accords Commerce wide discretion in the valuation of factors of production in the application of those guidelines." *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999); *see also Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011) ("Commerce is granted broad discretion to determine whether information is the best available because the statute does not define the term.").

Further, when reviewing Commerce's determination of what constituted the best information available to it, the courts do not "'evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information.'" *Zhejiang DunAn*, 652 F.3d at 1341 (*quoting Goldlink Indus. Co. v. United States*, 431 F.Supp.2d 1323, 1327 (Ct. Int'l Trade 2006)); *see also SeAH Steel*, 950 F.3d at 842 (*quoting Zhejiang DunAn*). Once Commerce reasonably chooses what is "best available," "the court will not second-guess Commerce's choice." *Mittal Steel Galati S.A. v. United States*, 31 C.I.T. 1121, 1141 (2007).

So in exercising its broad discretion, Commerce is not required to find perfect sources of surrogate values. *Home Meridian Int'l, Inc. v. United States*, 772 F.3d

1289, 1296 (Fed. Cir. 2014) ("The data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect."). Instead, "Commerce's mandate is to use the 'best available information' on the record." *SeAH Steel*, 950 F.3d at 841; *see also Mittal Steel*, 31 C.I.T. at 1141 ("Here, a reasonable mind could conclude that Commerce chose the best available information in selecting between the two choices {of surrogate values} in front of it. As such, Commerce's decision was supported by substantial evidence.")

Thus, the question here is not, as Plaintiffs pose, whether Commerce's selection of surrogate value data here can be compared to Commerce's selection in other situations. The proper question before this Court is rather whether a reasonable mind could conclude that Commerce selected the best source of information available on this record to value inland boat freight. A reasonable mind can easily conclude that Commerce did so.

Commerce was not presented with perfect information on surrogate inland boat freight rates; indeed, it was presented with no such information at all. Commerce therefore made a reasonable choice to value that input using the flat, per-unit ocean freight rates that was available on the record. Rather than distort that information by using distance information with no connection to those flat rates to recalculate those rates to an entirely new basis, Commerce rationally rejected introducing those distortions. *See Final IDM* (P.R. 423) at 43-44; *Analysis of Ministerial Error Allegation* (Dep't Commerce March 29, 2024) (P.R. 442) at 3 ("*Final ME Memo*"). As Commerce's selection was the best information available to

it in this review, there is no reason for this Court to disturb that selection or introduce the distortions Plaintiffs insist on.

Plaintiffs claim in their opening brief that they had submitted "the distance information for each boat freight route" so that Commerce had "all of the information necessary to calculate the surrogate value for boat freight" on the basis Plaintiffs would have liked. There are multiple problems with Plaintiffs' claim.

First, Plaintiffs did not in fact provide the distance information for the actual boat routes for which freight rate information was on the record. Instead, Giti provided distance information from an entirely different source than the Maersk ocean freight data that Commerce used for the freight surrogate value. In fact, Giti submitted no ocean or boat freight rate information at all. *See* Giti, *Surrogate Value Comments* (May 18, 2023) (P.R. 216) at 3 (table listing the items of surrogate value information Giti did submit). Instead, Giti submitted as "rebuttal" information to ocean freight information submitted by other parties (by another respondent, Sumitomo, and by Defendant-Intervenor) information on "distances between sea ports" from a webpage called sea-distances.org. *See* Giti's *Rebuttal Surrogate Value Comments* (May 25, 2023) (P.R. 242), Exhibit 4.

But, as noted by Commerce in its rejection of Giti's argument on this point, Giti placed nothing on the record to support its supposition that the distances as calculated by that website had any relation to the freight rates set by the shipping companies, and nothing to show that combining the two unrelated sources of data would not result in a distorted calculation. *See Final IDM* (P.R. 423) at 43-44.

9

Indeed, the disconnect between the distance information submitted by Giti and the ocean freight information on the record is clear even in Giti's own calculations. In its tables, Giti shows that the quoted Maersk rates for shipments from Shanghai to Baltimore, Maryland and to Miami, Florida are exactly the same (resulting in identical period averages of 0.2512 USD/kg for a 20' container and 0.3210 USD/kg for a 40' container for both routes). Giti's *Rebuttal Surrogate Value Comments* (P.R. 242), Exhibit 4 (bottom table). Yet according to Giti's selected source for distances, the Shanghai-Baltimore route is 10,514 nautical miles while the Shanghai-Miami route is only 9,810 nautical miles. *Id.* By applying Giti's preferred calculation, the Baltimore "per-kilometer" rates end up lower than the Miami "per-kilometer" rates, despite that in every instance over the 12-month period the rates are quoted for, the actual flat rates for the two routes are exactly identical. *See id.*

Likewise, while Giti claims that the route to Long Beach, California is longer (5,708 km) than the route to Portland, Oregon (5,150 km), the per-kg rates for Long Beach are lower than the "longer" route rates to Portland; and the same is true for the "shorter" route to Charleston, South Carolina than the "longer" route to Baltimore. *Id.* Giti's inference that the difference in rates are simply driven by differences in route distances is not supported by the information Giti submitted. Instead, Giti's proposed calculations would result even in the uniformly identical rates on some routes being transformed into unequal rates, distorting the resultant surrogate values Giti proposed. Giti's calculations confirm Commerce's concern that

combining the unrelated sources of information would be distortive and so affirm Commerce's rejection of Giti's proposed revisions.

Additionally, Giti's submission of the unconnected distance information it elected to submit to Commerce was not as a submission of information to value factors of production (*i.e.*, as surrogate value information); Giti instead submitted it as rebuttal information to surrogate value information submitted by other parties. *See Giti's Rebuttal Surrogate Value Comments* (P.R. 242) at 1 ("…we hereby provide submit {sic} rebuttal surrogate value information…."). Commerce's regulations are explicit that "{i}nformation submitted to rebut, clarify, or correct factual information submitted pursuant to § 351.408(c) {(surrogate value information)} <u>will not</u> be used to value factors under § 351.408(c)." 19 C.F.R. § 351.301(c)(3)(iv). As Commerce's regulations provide only one opportunity for other parties to rebut information submitted as surrogate value information (*see id.* ("{a}n interested party is permitted one opportunity to submit publicly available information to rebut, clarify, or correct such factual information submitted….")), Giti's submission of the new distance information as rebuttal information shielded that submission from rebuttal or correction by other parties.

Giti provides no reason why the Court should here force Commerce to ignore its own regulations on this point and accept Giti's rebuttal information as affirmative surrogate value information instead. Giti was given full opportunity during the course of the review to submit any information on boat freight it wished to have on the record as surrogate value information. Giti chose instead to submit

no such information for Commerce's use, but only to rebut other parties' submissions. As "the burden of creating an adequate record lies with {interested parties} and not with Commerce," (*QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (*quoting Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992)), the burden was on Giti, if it wished for Commerce to use the distance information Giti preferred to set surrogate values, to properly place that information on the record as surrogate value information. Giti failed to do so. *See Golden Dragon Precise Copper Tube Grp., Inc. v. United States*, 38 ITRD 1522 at *12 (Ct. Int'l Trade 2016) (explaining that a plaintiff seeking to force Commerce to use distance information in setting surrogate freight values that the plaintiff had failed to properly place on the relevant record "misstates Commerce's obligation" in setting surrogate values and rejecting that plaintiff's attempts to force Commerce to accept that information).

As a final point on this matter, Plaintiffs' argument that Commerce's margin calculation program supports their position that Commerce must apply a distance-based surrogate value is also without merit. *See P. Brief* at 7-8. As Commerce explained in its ministerial error memorandum, Commerce revised its calculations for Giti "to remove the distance component from the calculation of boat freight." *Final ME Memo* (P.R. 442) at 4. Thus, while Commerce may in other situations use a distance-based calculation, because a distance-based surrogate was not available to Commerce on the record here, Commerce reasonably adjusted its calculations to account for that fact. Plaintiffs have not challenged Commerce's revision of its

12

programming calculations as improper, so have no claim that Commerce did not in fact address the facts that were before it in this review.

Thus, Plaintiffs' arguments regarding Commerce's selection of a freight surrogate value lack the support that Plaintiffs cite to and would result in the distortion of the surrogate value information that was properly placed on the record. This Court should reject Plaintiffs' arguments as without merit.

### III.    Giti Failed to Exhaust its Administrative Remedies Regarding Commerce's Liquidation Instructions

Plaintiffs' arguments regarding their second claim—that Commerce's liquidation instructions applying the China-wide rate to any period entries that Plaintiffs had not reported to Commerce for review were "inappropriate"—are nearly as terse as Plaintiffs' other argument, and are presented without any authority claimed to support Plaintiffs' position. *See P. Brief* at 8-9.

But whatever merits Plaintiffs' arguments could have even if they were fleshed out, Plaintiffs have failed to exhaust their administrative remedies regarding this issue, as this Court must require. *See* 28 U.S.C. § 2637(d) ("the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies"). Defendant's brief provides a detailed account of Plaintiffs' failure on this point and how that failure requires that this Court dismiss Plaintiffs' challenge here. *See D. Brief* (E.C.F. No. 24) at 12-16. Defendant-Intervenor concurs with Defendant's argument on these points.

As Defendant points out, Commerce expressly stated its intention to issue those liquidation instructions in its preliminary determination in this review, and

provided all parties the opportunity to submit any argument they might have had to the agency in their briefing before the agency. *See Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission, and Preliminary Determination of No Shipments; 2021–2022* (Dep't Commerce Sept. 7, 2023) (P.R. 379) at 61,508 ("Pursuant to Commerce's assessment practice, for entries that were not reported in the U.S. data submitted by Giti and Sumitomo, we will instruct to CBP to liquidate such entries at the China-wide rate;" footnote omitted); *see also Draft Liquidation Instructions Pertaining to Giti* (Dep't Commerce Sept. 26, 2023) (P.R. 386).

Yet Plaintiffs presented no argument to Commerce regarding these liquidation instructions in their brief to the agency. *See Giti Case Brief* (Oct. 13, 2023) (P.R. 394) at 1-2 (setting out the arguments Giti did raise at the agency). They have instead waited to present them for the first time to this Court, without allowing the agency any opportunity to have explained its reasoning on the record for the Court to review. *Cf. Zhongce Rubber Grp. Co. Ltd. v. United States*, 352 F. Supp. 3d 1276, 1279 (Ct. Int'l Trade 2018), *aff'd*, 787 F. App'x 756 (Fed. Cir. 2019) ("Exhaustion allows agencies to apply their expertise, rectify administrative mistakes, and compile records adequate for judicial review—advancing the twin purposes of protecting administrative agency authority and promoting judicial efficiency."). As detailed in Defendant's response brief, none of the exceptions to the exhaustion doctrine apply to Plaintiffs' failure here, and so the Court should dismiss Plaintiffs' improper challenge on this point now. *See D. Brief* (E.C.F. No. 24) at 12-

16; *see also Corus Staal BV v. United Sates*, 503 F.3d 1370, 1379 (Fed. Cir. 2007) ("absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies").

## CONCLUSION

For the reasons set out in this and in Defendant's response brief, this Court should reject the Plaintiffs' unsupported argument regarding Commerce's calculation of a freight surrogate value in the challenged review and should dismiss Plaintiffs' argument regarding Commerce's liquidation instruction due to Plaintiffs' failure to exhaust their administrative remedies, as set out in the proposed order attached to Defendant's response brief. We respectfully request that the Court do so.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Elizabeth J. Drake
Nicholas J. Birch
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to Defendant-Intervenor*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Schagrin Associates hereby certifies that the Response Brief of Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, dated January 20, 2025, complies with the word-count limitation set out in 2(B)(1)(a) of this Court's Standard Chambers Procedures, limiting response briefs to 14,000 words. This response brief contains 3,668 words according to the word count function of the word processing software used to prepare the brief, excluding those items not counted toward word limitations in this Court's Standard Chambers Procedures.

/s/ Nicholas J. Birch
Roger B. Schagrin
Elizabeth J. Drake
Nicholas J. Birch
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-170
*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Dated: January 20, 2025