# UNITED STATES COURT OF INTERNATIONAL TRADE
# BEFORE THE HONORABLE RICHARD K. EATON

| | |
|---|---|
| GITI TIRE GLOBAL TRADING PTE., LTD., GITI RADIAL TIRE (ANHUI) COMPANY, LTD., AND GITI TIRE (FUJIAN) COMPANY LTD., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> *Defendant* <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENEGRY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> *Defendant-Intervenor.* | Court No. 24-00083 <br><br> Before: The Hon. Richard K. Eaton |

## PLAINTIFFS' REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Matthew McConkey
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235
mmcconkey@mayerbrown.com
*Counsel to Giti Tire Global Trading Pte. Ltd., Giti Radial Tire (Anhui) Company Ltd., and Giti Tire (Fujian) Company Ltd.*

Dated: February 17, 2025

-i-

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **THE DEPARTMENT'S BOAT FREIGHT CALCULATIONS ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE** .................................................. | 2 |
| **II.** | **PLAINTIFFS DID NOT FAIL TO EXHAUST THEIR ADMINISTRATIVE REMEDIES REGARDING THEIR CHALLENGE TO THE DEPARTMENT'S CBP INSTRUCTIONS** ................................................................. | 8 |
| **III.** | **CONCLUSION** ........................................................................................................ | 10 |
| **CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)** ........ | | 11 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Graphic Commc'n Int'l Union, Local 554 v. Salem-Gravure Div. of World Color Press, Inc.*, 843 F.2d 1490, 1493 (D.C. Cir. 1988) ............................................................................................... 7

*Pohang Iron and Steel Co., Ltd. v. United States*, 23 C.I.T. 778, 788-789 (1999) ......................... 7

**Administrative Decisions**

*1,1,1,2 Tetrafluoroethane (R-134a) from the People's Republic of China: Final Determination of the Antidumping Duty Investigation*, 82 Fed. Reg. 12192 (Dep't of Commerce February 1, 2017) ........................................................................................................................................ 5

*Aluminum Extrusions From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,* 89 Fed. Reg. 80506 (Dept. of Commerce Oct. 3, 2024) ........... 3

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Initiation of Antidumping Duty New Shipper Review; 2012-2013*, 78 Fed. Reg. 59915 (Dep't of Commerce Sept. 30, 2013) ........................................................................................................................................ 7

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2017-2018,* 84 Fed. Reg. 56420 (Dep't of Commerce Oct. 22, 2019) ....................................... 6

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review, Preliminary Determination of No Shipments and Partial Rescission of the Antidumping Duty Administrative Review; 2016-2017,* 83 Fed. Reg. 46479 (Dep't of Commerce Sept. 13, 2018) ............................................................................. 6

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review; 2012-2013,* 79 Fed. Reg. 40059 (Dep't of Commerce July 11, 2014) ......................................................................................................... 6

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 26130 (Dep't of Commerce April 15, 2024) ................................................................................... 2, 9

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021,* 88 Fed. Reg. 15663 (Dept. of Commerce March 14, 2023) ................. 5

*Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 1559 (Dept. of Commerce Jan. 11, 2023) ................................................................................................................................ 4, 5

*Potassium Permanganate from China* and *Fish Fillets from Vietnam*.  *See Potassium Permanganate From the People's Republic of China: Preliminary Results of the 2014 Antidumping Duty Administrative Review,* 81 Fed. Reg. 7751 (Dep't of Commerce February 16, 2016) ................................................................................................................................... 6

*Potassium Permanganate From the People's Republic of China: Preliminary Results of the 2015 Antidumping Duty Administrative Review*, 81 Fed. Reg. 89897 (Dep't of Commerce Dec. 13, 2016) ................................................................................................................................... 6

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE RICHARD K. EATON

| | |
|---|---|
| GITI TIRE GLOBAL TRADING PTE., LTD., GITI RADIAL TIRE (ANHUI) COMPANY, LTD., AND GITI TIRE (FUJIAN) COMPANY LTD., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> *Defendant* <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENEGRY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> *Defendant-Intervenor.* | Court No. 24-00083 <br><br> Before: The Hon. Richard K. Eaton, Judge |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiffs, Giti Tire Global Trade Pte. Ltd., Giti Radial Tire (Anhui) Company, Ltd. and Giti Tire (Fujian) Company Ltd ("Plaintiffs" or "Giti"), producers/exporters of subject merchandise in the underlying antidumping administrative review conducted by the U.S. Department of Commerce (the "Department" or "Commerce") in *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, hereby reply to the response briefs filed by the Defendant, United States, and Defendant-Intervenor, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("Defendant-Intervenor"). Defendant's Response to Plaintiffs' Motion for Judgment on the Administrative Record, *Giti v. United States,* No. 24-00083 (Ct. Int'l Trade Jan.

1

6, 2025), ECF No. 24 ("Def. Br."). Defendant-Intervenor's Response to the Motion for Judgement on the Administrative Record, *Giti v. United States,* No. 24-00083 (Ct. Int'l Trade Jan. 6, 2025), ECF No. 25 ("Def.-Int. Br."). *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 26130 (Dep't of Commerce April 15, 2024) ("*Amended Final Results*"). For the reasons set forth herein and in Plaintiffs' original motion, this Court should reject the arguments presented by the Defendant and Defendant-Intervenor and remand the Department's *Amended Final Results* in the underlying administrative review for judgment in Plaintiffs' favor.

I. **THE DEPARTMENT'S BOAT FREIGHT CALCULATIONS ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

Both Defendant and Defendant-Intervenor allege that Plaintiffs boat freight calculation arguments are unsupported by substantial evidence. Def. Br. at 10-12, Def.-Int. Br. at 4-13. However, in its response brief, the Defendant specifically notes that the Maersk data at issue in the underlying Administrative Review provided fees for shipping containers from Shanghai to various destinations in the United States. Def. Br. at 10. Defendant then states that the boat freight rates used by the Department "were not stated on per-kilometer basis, but instead reflected a flat rate for shipping the specified size container." *Id.* This is simply not correct. An examination of the freight values submitted by Defendant-Intervenors in the underlying review indicates that the rates to ship a 20 foot or 40 foot container *vary depending on the destination*. Letter from Nicholas J. Birch, Schagrin Associates, to the U.S. Dep't of Commerce, entitled "*Petitioner's First Surrogate Value Submission*" at Exhibit 12 (May 18, 2023) (P.R. 213). For example, in August 2021, the rate to ship a 20 foot container ranged from $4,752.00 to Long Beach, CA to $6,860.00 to Charleston, SC. *Id.* A review of the record evidence clearly

demonstrates that per-container rates to the west coast ports of Long Beach, CA and Portland, OR are lower than the rates to the east coast ports *in every month of the POR*. *Id.* Moreover, the Defendant-Intervenor calculated an average per-unit cost for the east coast and the west coast of $0.2901/kg and $0.2389/kg, respectively. *Id.* As such, it is unambiguous that the decisive factor in the difference in freight rates *is the distance*. Thus, Defendant's conclusion that the freight rate data is simply a flat fee and is not stated on a distance basis is false and belied by record evidence.

Defendant states that that "Plaintiffs are also wrong that the Department's practice is to calculate all boat freight on a per-kilogram, per-kilometer basis without regard for the underlying surrogate value source or record." Def. Br. at 11. As an initial matter, it is clear from the discussion above that distance *is* part of the underlying surrogate value source. Defendant cites to two recent cases to support its contention that "Commerce has previously calculated boat freight on a per-kilogram basis, as opposed to per-kilogram, per-kilometer basis." *Id.* However, those cases are not on point, and actually support the premise that the Department's practice is to consider distance when valuing boat freight.

In *Aluminum Extrusions*, the Department did not use a surrogate value, but instead, the issue related to the per-kilogram freight cost incurred in a market economy to ship a heat exchanger or the aluminum extrusion contained in the heat exchanger, "The verified *market economy* per-kilogram international freight and U.S. inland freight costs to ship a heat exchanger are on the record (or can be calculated from information on the record) and this per-kilogram cost applies to the entire heat exchanger, including the aluminum extrusions in the heat exchanger." *Aluminum Extrusions From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,* 89 Fed. Reg. 80506 (Dept. of Commerce Oct. 3,

3

2024), and accompanying Issues and Decision Memorandum at Comment 3 (*emphasis added*). Given that this case involved market economy freight, it is irrelevant to the issue at hand.

In *Chlorinated Isos*, the issue was the use of a per-kilogram freight amount to convert Mexican import statistics from an FOB to a CIF basis, not, as in this case, the valuation of boat freight used to transport inputs. *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 1559 (Dept. of Commerce Jan. 11, 2023), and accompanying Issues and Decisions Memorandum at Comment 1. Citing to its Policy Bulletin 10.2, the Department explains its practice when using Mexican import statistics, 'in situations where the surrogate country import statistics do not include international freight costs, {the Department} will add international freight and foreign brokerage and handling charges to the import value.' *Id.* Thus, in that case, it was the freight component of the import data used for the surrogate value of raw material inputs. It had *nothing to do* with the surrogate value for boat freight. In fact, the Department's further discussion highlights the fact that when valuing ocean freight, distance is a key requirement. When discussing the appropriate freight rate to add to the Mexican GTA value for chlorine, where the United States accounted for over 99 percent of the total imports, the Department stated, "We find this rate to be more accurate and relevant given that this input essentially originates only from the United States which is in close proximity to Mexico, thereby accounting for the *distance factor* that the petitioners note is a key component of the overall freight rate." *Id.* (emphasis added). With respect to China-to-Mexico rates, the Department stated, "*distance is a major driver of ocean freight costs* and, as such, we would reasonably expect ocean freight rates to be higher, because China is at a significantly greater distance from Mexico than the United States." *Id.* (emphasis added).

4

Defendant also cites to an older *Chlorinated Isos* administrative review from 2015 that indicates values in USD/kg. *Id.* However, there is no indication that the Department did not allocate the value over distance in its margin calculation.

Finally, Defendant points out that "Commerce followed its exact methodology in this case in the preceding administrative review of this order." *Id.* However, that case should not be substantively considered. Giti raised the same issue in that review and the Department incorrectly denied Giti's argument to correct the boat freight surrogate value. *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021,* 88 Fed. Reg. 15663 (Dept. of Commerce March 14, 2023), and accompanying Issues and Decision Memorandum at Comment 16. the Department was wrong in that review and it continues to be wrong in this review. A previous incorrect finding should not be used as a basis to deny the appropriate correction in this case.

Thus, Defendant has not supported its contention that the Department's practice is to calculate boat freight on inputs on only a per-kilogram basis. As explained in Plaintiff's Rule 56.2 Motion for Judgment, the Department's actual longstanding practice is to calculate the transportation costs for inputs on a per-kilogram, per-kilometer basis. When calculating the freight on inputs, the Department's normal practice is to multiply the freight surrogate value by the distance from the supplier to the factory (or the distance from the port to the factory, whichever is shorter). *See, e.g., 1,1,1,2 Tetrafluoroethane (R-134a) from the People's Republic of China: Final Determination of the Antidumping Duty Investigation,* 82 Fed. Reg. 12192 (Dep't of Commerce February 1, 2017), and accompanying Issues and Decision Memorandum at 22-23. The Department's practice is also plainly stated in the margin calculation program used

5

to calculate Giti's margin.  Memorandum from Whitley Herndon, Program Manager, to The File, regarding "*Calculations for Giti for the Amended Final Results*" at Final Margin Calculation Log Lines 1260 – 1267 (March 29, 2024) (C.R. 518).

The Department's actual practice of using a per-kilogram, per-kilometer rate is stated in multiple administrative reviews involving *Potassium Permanganate from China* and *Fish Fillets from Vietnam*.  See *Potassium Permanganate From the People's Republic of China: Preliminary Results of the 2014 Antidumping Duty Administrative Review,* 81 Fed. Reg. 7751 (Dep't of Commerce February 16, 2016), and accompanying Issues and Decision Memorandum at 15; *Potassium Permanganate From the People's Republic of China: Preliminary Results of the 2015 Antidumping Duty Administrative Review*, 81 Fed. Reg. 89897 (Dep't of Commerce Dec. 13, 2016), and accompanying Issues and Decision Memorandum at 14-15; *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2017-2018,* 84 Fed. Reg. 56420 (Dep't of Commerce Oct. 22, 2019), and accompanying Issues and Decision Memorandum at 15; *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review, Preliminary Determination of No Shipments and Partial Rescission of the Antidumping Duty Administrative Review; 2016-2017,* 83 Fed. Reg. 46479 (Dep't of Commerce Sept. 13, 2018), and accompanying Issues and Decision Memorandum at 16; *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review; 2012-2013,* 79 Fed. Reg. 40059 (Dep't of Commerce July 11, 2014), and accompanying Issues and Decision Memorandum at 26; and *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Initiation of Antidumping Duty New Shipper Review; 2012-2013*, 78 Fed. Reg. 59915 (Dep't of

6

Commerce Sept. 30, 2013), and accompanying Issues and Decision Memorandum at 25-26. Thus, Department precedent overwhelmingly supports the fact that the Department's practice is to state the surrogate value for boat freight on inputs on a per-kilogram, per-kilometer basis.

The information that would allow the Department to follow its normal practice was on the record, yet the Department ignored it. Giti submitted the distance information for each boat freight route in its rebuttal surrogate value submission to calculate the average per-kilogram, per-kilometer value and submitted its calculation to the Department in Excel format. *See* Letter from Matthew J. McConkey to the U.S. Dep't of Commerce, entitled "*Rebuttal Surrogate Value Comments*" (May 25, 2023) (P.R. 243). As such, the Department had all of the information necessary to calculate the surrogate value for boat freight in line with its normal methodology.

It is clear that the Department departed from its normal practice by not using a surrogate value for boat freight stated on a per-kilogram, per-kilometer basis. Moreover, the Department did not give a reasoned explanation of why it departed from its normal methodology in this case. Such an explanation is necessary whenever the Department departs from established precedent. *Pohang Iron and Steel Co., Ltd. v. United States*, 23 C.I.T. 778, 788-789 (1999), *quoting Graphic Commc'n Int'l Union, Local 554 v. Salem-Gravure Div. of World Color Press, Inc.*, 843 F.2d 1490, 1493 (D.C. Cir. 1988). Therefore, the Department's decision to remove the distance component from its calculation is both contrary to its established practice and without the necessary explanation needed to depart from its practice, and thus not appropriate.

The Department should amend the final results of the 2021-2022 administrative review for Giti to follow its normal methodology and use the surrogate value for boat freight on the record stated on a per-kilogram, per-kilometer basis.

**II.   PLAINTIFFS DID NOT FAIL TO EXHAUST THEIR ADMINISTRATIVE REMEDIES REGARDING THEIR CHALLENGE TO THE DEPARTMENT'S CBP INSTRUCTIONS**

Both Defendant and Defendant-Intervenor allege that Plaintiffs failed to exhaust their administrative remedies with respect to language appearing in the final decision Federal Register notice regarding liquidation instructions the agency stated it intended to provide U.S. Customs and Border Protection ("CBP"). Def. Br. at 12-16, Def.-Int. Br. at 13-15. Indeed, the majority of Defendant's Response Brief focuses on the allegation that Plaintiffs failed to exhaust their administrative remedies on this issue because it did not comments on the Department's draft CBP instructions. However, that allegation is simply incorrect. While Giti did not comment on the Department's draft CBP instructions (because those instructions were correct), the "liquidation instructions" being challenged by Giti (as issued in the Final Results), are *fundamentally different* from the draft issued earlier in the process. As such, none of the Defendant's "exhaustion" discussion is relevant.

Again, Giti did not comment on the draft CBP instructions issued on September 25, 2023. The reason for that is that those instructions were correct, and provided no reason for concern to Giti. Specifically, the operative language in those draft CBP instructions stated:

> 1a. For all shipments of passenger tires from the People's Republic of China (China) produced and exported by Giti Tire Global Trading Pte. Ltd.; Giti Radial Tire (Anhui) Company Ltd.; Giti Tire (Fujian) Company Ltd.; Giti Tire (Anhui) Company Ltd.; Giti Tire (Chongqing) Company Ltd.; Giti Tire (Hualin) Company Ltd.; Giti Tire (USA) Ltd.; Giti Tire (Yinchuan) Company, Ltd.; Giti Tire Greatwall Company, Ltd. (A-570-016-134), imported by or sold to (as indicated on the commercial invoice or Customs documentation) the firm listed below, and entered, or withdrawn from warehouse, for consumption during the period 08/01/2021 through 07/31/2022 assess an antidumping liability equal to the percentage listed below of the entered value:
>
> Importer or customer: [               ]
> Final rate: [         ]%

8

> 1b. For all shipments of passenger tires from China exported by Giti Tire Global Trading Pte. Ltd.; Giti Radial Tire (Anhui) Company Ltd.; Giti Tire (Fujian) Company Ltd.; Giti Tire (Anhui) Company Ltd.; Giti Tire (Chongqing) Company Ltd.; Giti Tire (Hualin) Company Ltd.; Giti Tire (USA) Ltd.; Giti Tire (Yinchuan) Company, Ltd.; Giti Tire Greatwall Company, Ltd., entered, or withdrawn from warehouse, for consumption during the period 08/01/2021 through 07/31/2022, and not covered by paragraph 1a, assess antidumping duties at the China-wide rate. The Chinawide rate is 76.46 percent.

*Draft Liquidation Instructions Pertaining to Giti* (Dep't of Commerce Sept. 25, 2023) (P.R. 386). Indeed, there was only one importer of Giti-produced product during the relevant POR (Giti Tire (USA) Ltd.), so Giti had no concerns with this draft language. However, in the final decision, no final CBP instructions were issued with respect to Giti. Instead, the Federal Register notice announcing the final results included the below language:

> Pursuant to Commerce's assessment practice, for entries that were not reported in the U.S. data submitted by Giti, we will instruct to CBP to liquidate such entries at the China-wide rate (i.e., 76.46 percent).

*Amended Final Results* at 26131. The draft CBP instructions and the above-cited language from the final results are *very different*, in both language *and* effect. Again, the draft CBP instructions were of no concern to Giti, as there was only one POR importer of record of Giti-produced subject merchandise – Giti itself. As such, if there was an entry imported by another, non-Giti entity claiming to be importing Giti-produced product, the China-Wide rate would indeed be applicable/appropriate. However, the Federal Register language directs CBP to access Giti's submitted U.S. Sales (Section C) database and, then assess a rate of 76.46% for any POR entries not reported in that U.S. Sales database. Again, as set forth in Plaintiff's 56.2 brief, because all of Giti's U.S. sales were reported on a CEP basis, there is a significant difference between Giti's POR entries of the subject merchandise and the sales reported in its U.S. Sales database. Simply by way of example, in the last four weeks of the POR, Giti imported the subject merchandise, but some of that subject merchandise was not yet sold to an unaffiliated party during the POR. As

such, those entries id not appear in Giti's U.S. Sales database. However, under the language of the Federal Register notice, all of those Giti entries would be subject to the China-wide antidumping rate of 76.46% - despite the fact that Giti was a fully cooperative mandatory respondent. There is no basis in law to subject any of Giti's entries to the China-wide antidumping rate – and the Government not cited to any such basis. Giti was fully cooperative in the underlying proceeding.

Indeed, the "fix" here is simple. The Defendant simply needs to confirm that it will issue final CBP instructions the same as those issued in draft in this proceeding, and confirm that it will disregard the referenced language in the Federal Register notice. The language in the Federal Register notice results in a punitive antidumping rate being assessed against certain imports by cooperating respondents when no finding of a lack of cooperation was made in the administrative proceeding.

### III.  CONCLUSION

For the reasons stated above, Plaintiffs again respectfully request that the Court enter judgment in their favor.

Respectfully submitted,

/s/ Matthew McConkey
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235
mmcconkey@mayerbrown.com
*Counsel Giti Tire Global Trading Pte. Ltd., Giti Radial Tire (Anhui) Company Ltd., and Giti Tire (Fujian) Company Ltd.*

Dated: February 17, 2025

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)**

The undersigned hereby certifies that this brief contains 2,891 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 14,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

/s/ Matthew McConkey
Mayer Brown LLP
(202) 263-3235
mmcconkey@mayerbrown.com
*Counsel to Giti Tire Global Trading Pte. Ltd., Giti Radial Tire (Anhui) Company Ltd., and Giti Tire (Fujian) Company Ltd.*